UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
                                              :
UNITED STATES OF AMERICA,    :    CASE NO. 1:05-CR-433 [1:07-CV-297]
                                              :
      Plaintiff/Respondent,    :
                                              :
vs.                                        :    ORDER & OPINION
                                              :    [Resolving Doc. No. 77]
MICHAEL FROST,                  :
                                              :
      Defendant/Petitioner.    :
                                              :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On February 2, 2007, Petitioner Michael Frost filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. [Doc. 77.] On April 5, 2007, the Government opposed Frost's motion. [Doc. 84.] Petitioner Frost filed a reply on May 7, 2007. [Doc. 86.] This Court referred the case to Magistrate Judge George J. Limbert under Local Rule 72.1. [Doc. 78.] On April 4, 2008, Magistrate Judge Limbert filed a Report and Recommendation. [Doc. 96.] With that Report and Recommendation, the Magistrate Judge recommends that this Court deny Frost's motion. Frost does not object to the Magistrate Judge's findings. For the reasons provided below, the Court **DECLINES TO ADOPT** the Magistrate Judge's Report and Recommendation and **CONDITIONALLY GRANTS** Frost's motion.

I. Background

On August 31, 2005, the Government filed a multi-count indictment against Petitioner Michael Frost and others involved in a drug conspiracy. [Doc. 8.] On October 19, 2005, Petitioner Frost, with counsel, pled guilty pursuant to a plea agreement to Count 5 of the indictment charging distribution of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). [Doc. 33.]

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

As part of the plea agreement, the Government agreed to dismiss the remaining counts of the indictment at the time of sentencing. [Doc. 38.]

On January 18, 2006, Petitioner Frost filed an objection to the presentence report prepared in his case and a motion for a downward variance. [Doc. 58.] In the presentence report, the Probation Department recommended Frost be found a career offender under U.S.S.G. § 4B1.1(a)(3). The Probation Department based this recommendation upon Frost's two prior convictions for drug offenses, one a 1996 state conviction for Attempted Drug Trafficking and the other a 1998 federal conviction for Distribution of Cocaine Hydrochloride. In objecting to the presentence report, Petitioner Frost argued that although he technically qualified as a career offender, "the career offender designation substantially overstate[d] the seriousness of Mr. Frost's criminal record." [Id. at 2.] Frost argued that the first drug conviction for Attempted Trafficking, though a felony, was significantly less serious than reflected by the Guidelines calculation. In that state case, Frost was arrested after police recognized a passenger in his car who then fled; when searching the car, police found drugs and a firearm. Frost contended that this conviction was not as serious as the Guidelines reflect because it occurred nearly a decade earlier, involved a small quantity of drugs, and resulted in a minimal sentence of four months in prison. Therefore, Petitioner Frost argued that the Court should not enhance his sentence from a 37-46 month range to the 188-235 month range required by the career offender classification.

At Frost's sentencing hearing on January 25, 2006, the Court sought clarification from Petitioner Frost's counsel regarding the nature of the Defendant's objection to the presentence report. Frost's counsel explained:

[F]irst, initially I made [the argument] . . . that perhaps this may not be a career

-2-

Case No. 1:07-CV-297; 1:05-CR-433
Gwin, J.

> offender situation, although it seems to me that by pure operation of the statute, that we have a situation where he is a career offender so the argument I make to the Court is one for a downward departure, a variance.

[Doc. 71 at 3.] Based on this representation, the Court overruled any objection to the report, and found that both prior drug convictions were qualifying offenses for purposes of the career offender determination. [Id.] The Court then proceeded to hear the Government's view on whether the Defendant's criminal history was overrepresented because the state drug conviction for Attempted Drug Trafficking was such a low level offense. The Government reiterated that the offense was a qualifying prior conviction, and encouraged the Court not to consider the underlying offense conduct. [Id. at 4-7.] The Government also argued the aggravating circumstance that Frost committed the instant offense while on supervised release for a federal conviction for intent to distribute cocaine. [Id.]

The Court concluded that the presentence report's recommendation overstated Frost's criminal history, and so reduced his criminal history category from a Level VI to a Level V. [Id. at 8-10] In so finding, the Court relied principally on the fact that the predicate state offense was a relatively minor offense and occurred nearly ten years earlier. [Id. at 10.] With the offense level set at 31 and the criminal history category at V, the recommended Guidelines range was 168-210 months imprisonment. [Id. at 9.]

Before sentencing, the Court heard statements on behalf of the Defendant. Defense counsel reiterated that "[t]he career offender status, even with the downward departure, create[d] a very harsh result." [Id. at 10.] Referring to arguments already made in the sentencing memo, defense counsel highlighted Frost's promising characteristics and requested that the Court sentence at the low end of the Guidelines range, "considering this to be an enormous enhancement that the career offender status

-3-

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

imposes on Mr. Frost." [Id. at 12.] Before pronouncing sentence, the Court considered the § 3553(a) factors as they applied to the Defendant. Noting some hesitation about whether the Guidelines range "reflect[s] the seriousness of the offense," "especially in comparison to state sentences," the Court sentenced Frost below the Guidelines range, to 135 months imprisonment. [Id. at 14-15.] Before the hearing adjourned, the Government noted an objection to the downward departure, but defense counsel made no objections. [Id. at 17.]

## II. The Instant Motion

Frost filed the instant motion on February 2, 2007. In his motion, Frost asserts two grounds for relief: ineffective assistance of counsel at sentencing in violation of his Fifth and Sixth Amendment rights and a Due Process violation because he was denied a fair sentencing hearing where information provided to the Court did not bear sufficient indicia of reliability. [Doc. 77.]

In his first ground for relief, the Petitioner argues that his counsel rendered ineffective assistance by failing to object to the enhancement of the Petitioner's sentence based on the prior state conviction. [Id. at 2.] Challenging his career offender classification, the Petitioner argues that his 1996 state conviction for Attempted Drug Trafficking did not qualify as a predicate controlled substance offense. The Guidelines define such qualifying offenses as those "that prohibit[] the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). Because his state conviction involved only simple possession of cocaine, with no intent element, the Petitioner argues it was not a qualifying offense. [Doc. 77 at 2-3.] In support of this argument, Petitioner Frost cites *United States v. Montanez*, 442 F.3d 485 (6th Cir. 2006), where the Sixth Circuit endorsed a categorical approach to statutory language, concluding that only

-4-

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

offenses containing an element of intent to manufacture, import, export, distribute, or dispense qualify as enhancers pursuant to U.S.S.G. § 4B1.2(b). The Sixth Circuit explicitly stated that convictions under former O.R.C. § 2925.03 that criminalize only possession, such as Petitioner's Frost 1996 conviction,[1/] do not qualify as controlled substance offenses under U.S.S.G. § 4B1.1. *Montanez*, 442 F.3d at 494.

In making his ineffective assistance of counsel claim, Petitioner Frost acknowledges that *Montanez* was decided over a month after the sentencing in his case. However, Frost notes that the case was pending at the time of his plea and sentencing. [Doc. 77 at 3.] Frost further argues that "*Montanez* did not create new law but simply clarified Guideline interpretation" and was based on existing caselaw in both the Sixth Circuit and other federal circuits. [Id.] Thus, counsel was ineffective in not raising an objection to Frost's career offender status at sentencing, at least to preserve the issue for direct appeal.

In his second ground for relief, the Petitioner argues that the Probation Department failed to adequately and correctly advise the court as to the nature of Frost's prior state conviction and applicable law. Without alleging bad faith, the Petitioner argues that the Probation Department "could have discovered the true nature of his prior conviction and further should have been aware of the potential interpretation of law which was later clarified in *Montanez*." [Id. at 4.] Because the presentence report was erroneous and because he was sentenced based on a misunderstanding of the applicable facts and law, Petitioner Frost argues that he was denied due process and his sentence is void. [Id.]

---

[1/]*Montanez* applied specifically to O.R.C. § 2925.03(6) and (9), but the Sixth Circuit noted that O.R.C. § 2925.03(4), the provision under which Petitioner Frost was convicted, similarly criminalized *only* possession. *Montanez*, 442 F.3d at 493, n.5.

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

In opposing the Petitioner's motion to vacate his sentence, the Government argues that defense counsel's performance was not deficient. The Government alleges that "when Frost was sentenced in 2006, [the Sixth] Circuit's statutory construction of Ohio's former drug laws suggested that any conviction under Section 2925.03 constituted a predicate controlled substance offense for career offender status." [Doc. 84 at 9.] Relying on two unpublished Sixth Circuit opinions, *Gibbs v. United States*, 3 F.App'x 404, 2001 WL 133120 (6th Cir. 2001), and *United States v. Coteat*, 133 F.App'x 177, 2005 WL 1313529 (6th Cir. 2005), the Government argues that caselaw in the Sixth Circuit at the time of Frost's sentencing held that all provisions of O.R.C. § 2905.03 prohibited possession with intent to distribute within the meaning of U.S.S.G. § 4B1.2(b). [Doc. 84 at 9-10.] Therefore, the Government asserts, Frost's counsel at sentencing "cannot be faulted for failing to assert a meritless objection to the Court's career offender determination." [Id. at 10.] Further, the Government argues that defense counsel could not be faulted for failing to predict the outcome of *Montanez*, where the Sixth Circuit explicitly rejected *Gibbs* and *Coteat* as "wrongly decided" and arguably abruptly changed course. [Id. at 10-11.] The Government also notes defense counsel's efforts at sentencing to represent the disproportionate effect of the application of the Guidelines enhancement, and the success of those arguments given that Frost received a below-Guidelines sentence of 135 months. [Id. at 12.] For all these reasons, the Government claims Petitioner Frost fails to show that his counsel's actions at sentencing fell below an objective standard of reasonableness.

In addition, the Government argues that in his plea agreement Petitioner Frost waived his right to challenge his sentence on direct appeal or collaterally. [Id. at 13-15.] As a result, and because Frost's sentence was consistent with his plea agreement, the Government claims that the Petitioner

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

cannot now seek to benefit from changes in the law after his plea agreement was concluded. [Id. at 15-16.] Further, the Government argues that even if Frost's challenge to his sentence is not precluded by his plea agreement, the challenge is not cognizable under § 2255 because it asserts a non-constitutional error. [Id. at 16.] Assuming that the ineffective assistance claim fails, the Government states that "a claim based on a change in statutory construction of Ohio's former drug trafficking statute, under *Montanez*, constitutes a nonconstitutional claim that does not amount to a due process violation." [Id. at 17.]

In his reply to the Government's response, Petitioner Frost argues that "Sixth [C]ircuit law was at best conflicted and by no means clear on the Career Offender issue at the time of the sentencing and indeed, sufficient caselaw existed that counsel should have at least raised the issue." [Doc. 86 at 2.] By making an objection, even if he had not prevailed at the sentencing hearing, counsel would have preserved the issue for direct appeal, and Frost would have enjoyed the benefit of the *Montanez* holding, which was decided less than two months after Frost's sentencing. [Id.] Frost further clarifies that, in his opinion, counsel was not ineffective for failing to predict the *Montanez* outcome, but for failing to raise the issue that the prior state conviction was not a qualifying trafficking offense and failing to object to Frost's Career Offender classification. [Id. at 4.] Citing caselaw from other circuits and a Sixth Circuit case that seemed to conflict with the *Gibbs* and *Coteat* cases, United States v. Wright, 43 F.App'x 848 (6th Cir. 2002), the Petitioner argues that it would have been prudent and reasonable for counsel at sentencing to raise the issue that Frost's prior state conviction was not a qualifying predicate offense. [Id. at 4-6.] Because his plea agreement allowed collateral attack based on a claim of ineffective assistance of counsel, and because counsel was deficient, Petitioner Frost believes he is entitled to relief.

-7-

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

### III. Legal Standard

*A. Section 2255*

Section 2255 gives a federal prisoner post-conviction means of collaterally attacking a conviction or sentence that he alleges to be in violation of federal law. See *In re Gregory*, 181 F.3d 713, 714 (6th Cir. 1999). Section 2255 provides four grounds upon which a federal prisoner may challenge his conviction or sentence:

> 1) That the sentence was imposed in violation of the Constitution or laws of the United States;
>
> 2) That the court was without jurisdiction to impose such sentence;
>
> 3) That the sentence exceeded the maximum authorized by law; or
>
> 4) That the sentence is otherwise subject to collateral attack.

*Hill v. United States*, 368 U.S. 424, 426-27 (1963); 28 U.S.C. § 2255.

To prevail on a § 2255 motion alleging a constitutional error, the movant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Meanwhile, to prevail on a § 2255 motion alleging non-constitutional error, the movant must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill*, 368 U.S. at 428).

*B. Ineffective Assistance Of Counsel*

To prevail on a claim that counsel's assistance was constitutionally ineffective, a movant under

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

§ 2255 must pass a two-pronged test. First, he must show that counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Judicial scrutiny of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Nonetheless, the court must make an independent judicial evaluation of counsel's performance to determine whether counsel acted reasonably under all the circumstances. *Roe v. Flores-Ortega*, 528 U.S. 470, 480-81 (2000). The Supreme Court in *Strickland* emphasized that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

Second, the movant must show that the deficient performance prejudiced the defense so seriously as to deprive him of a fair trial. *Id.* at 687. The movant meets the second prong of the test by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id.* at 697.

IV. Analysis

A. *Ground One: Ineffective Assistance Of Counsel*

Petitioner Frost faults his attorney for failing to object to the enhancement of the Petitioner's sentence related to his classification as a career offender. Acknowledging one federal conviction as a qualifying offense, he challenges a prior state conviction as not a qualifying offense for career

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

offender status. The Petitioner asserts that counsel failed to act in a reasonably competent manner by failing to challenge the conclusion that the previous conviction was a qualifying predicate offense. Counsel thereby failed to at least preserve the issue, which was contemporaneously being litigated at the Sixth Circuit, for direct appeal. The Government responds that defense counsel was strategic and effective in persuading the Court to grant a downward variance at sentencing, and could not be expected to be clairvoyant with respect to the pending Sixth Circuit litigation. Magistrate Judge Limbert agreed with the Government. The Court disagrees and finds both that defense counsel's performance at sentencing fell below an objective standard of reasonableness and that the deficient performance prejudiced the Petitioner, resulting in a fundamentally unfair outcome of the proceeding.

*i. Relevant Caselaw Regarding Predicate Offenses for Career Offender Enhancement*

According to the relevant Sentencing Guidelines, a defendant is a career offender if, among other characteristics, the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1. In 1996, Petitioner Frost was arrested because police seized a quantity of cocaine that was found in the car Frost was driving.[2] Frost was subsequently convicted under O.R.C. § 2925.03(A)(4), which criminalized possession of a controlled substance. [*See* Doc. 77, Ex. A at 4, Transcript of Plea.] This Court considers whether this prior conviction should have qualified as a predicate offense under U.S.S.G. § 4B1.1 for the purposes of career offender status and ensuing sentencing enhancement and whether Frost's counsel was ineffective for failing to raise or preserve this issue.

---

[2] That was how defense counsel portrayed the facts leading to the prior state conviction in the sentencing memorandum filed with this Court. [Doc. 58 at 3-4.] Upon the Court's inquiry at the sentencing hearing regarding the veracity of this representation, the Government did not disagree. [*See* Doc. 71 at 4-5.]

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

On March 23, 2006, the Sixth Circuit decided *United States v. Montanez*, 442 F.3d 485 (6th Cir. 2006), holding that convictions under former Ohio Revised Code §§ 2925.03(6) and (9) do not qualify as controlled substance offenses for the purposes of career offender sentencing enhancement under U.S.S.G. § 4B1.1.[3/] *Montanez*, 442 F.3d at 494. In *Montanez*, the Sixth Circuit used the categorical approach and looked at the statutory language for the convictions at issue. *Id.* at 491. Ohio Revised Code § 2925.03(A)(6) read: "No person shall knowingly . . . [p]ossess a controlled substance in an amount equal to or exceeding three times the bulk amount, but in an amount less than one hundred times that amount." O.R.C. § 2925.03(A)(6), *qtd. in Montanez*, 442 F.3d at 491. The Sixth Circuit noted that "simple possession – that is, possession without the proof beyond a reasonable doubt of the requisite intent to 'manufacture, import, export, distribute, or dispense' – is not a controlled substance offense" for the purposes of sentencing. *Montanez*, 442 F.3d at 488. Because the statutory language of O.R.C. §§ 2925.03(A)(4), (6), and (9) criminalized *only* possession in a bulk amount, convictions under those provisions could not be qualifying convictions for sentencing enhancement purposes.

In reaching its conclusion in *Montanez*, the Sixth Circuit sought to address "past conflicting unpublished dispositions" by the Circuit and "the errors contained in those decisions." *Id.* at 491. The Sixth Circuit expressly acknowledged that two such cases were "wrongly decided" – *Gibbs v. United States*, 3 F.App'x 404 (6th Cir. 2001), and *United States v. Coteat*, 133 F.App'x 177 (6th Cir. 2005). *Montanez*, 442 F.3d. at 491. Rather than follow those cases, the Circuit decided to follow its conflicting decision in *United States v. Wright*, 43 F.App'x 848 (6th Cir. 2002), and a similar

---

[3/]This holding includes O.R.C. § 2925.03(A)(4) by extension, as it only varies from (A)(6) and (A)(9) by involving lesser amounts. *Montanez*, 442 F.3d at 493, n.5.

-11-

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

decision by the Ninth Circuit in *United States v. Foster*, 28 F.3d 109, 1994 WL 201201 (9th Cir. 1994) (interpreting O.R.C. § 2925.03(A)(4)).

The Sixth Circuit's use of the categorical approach to determine whether a prior conviction qualified as a predicate offense for the purposes of sentencing enhancement was not new with *Montanez*; such had long been the law. *Taylor v. United States*, 495 U.S. 575, 601-02 (1990); *United States v. Dolt*, 27 F.3d 235, 238 (6th Cir. 1994); *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995); *United States v. Butler*, 207 F.3d 839, 843 (6th Cir. 2000); *Gibbs v. United States*, 3 F.App'x 404, 405 (6th Cir. 2001); *United States v. Wright*, 43 F.App'x 848, 851 (6th Cir. 2002); *United States v. Coteat*, 133 F.App'x 177, 178 (6th Cir. 2005). In applying the categorical approach, courts look only to "the fact of conviction and the statutory definition of the predicate offense." *Arnold*, 58 F.3d at 1121 (citing *Taylor*, 495 U.S. at 602). Accordingly, "it is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct." *Wright*, 43 F.App'x at 851 (quoting *United States v. John*, 936 F.2d 764, 767 (3rd Cir. 1991)).

Given that the categorical approach had already been adopted at the time of Petitioner Frost's sentencing, the critical question for Frost's counsel was how the categorical approach interpreted the particular statute under which Frost was charged, O.R.C. § 2925.03(A)(4). At the time of Frost's sentencing, there were three Sixth Circuit opinions, all unpublished, directly on point. *See Gibbs, Wright, Coteat*. Because all three cases were unpublished, none had binding precedential value. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 n.4 (6th Cir. 2007).

Admittedly, the most recent, *Coteat*, decided in 2005, seemed clear and controlling, holding that a prior conviction under O.R.C. § 2925.03(A)(4) qualified as a predicate offense for purposes of career offender status. *Coteat*, 133 F.App'x at 179. That decision relied entirely on the Circuit's

-12-

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

previous holding in *Gibbs*, which in turn had relied on an Ohio court's interpretation of the statute, the titles and targets of the Ohio drug statutes, and the possibility of an affirmative defense under § 2925.03 for possession for personal use. *Gibbs*, 3 F.App'x at 405-06. However, *Coteat* simply ignored the intervening *Wright* case, wherein the Sixth Circuit explicitly found that § 2925.03 "includes both qualifying and non-qualifying crimes." *Wright*, 43 F.App'x at 852. Further, in *Wright*, the Sixth Circuit confirmed that § 2925.03(A)(4) did not contain an element of distribution, but "rather mere possession [would] establish a violation." *Id.* Because the 2005 decision in *Coteat* did not address, much less reject, *Wright*, the two unpublished conflicting decisions coexisted. As such, the 2006 decision in *Montanez* did not represent a change in law, but a choice of one interpretation among two conflicting conclusions.

*ii. Defense Counsel's Performance was Deficient*

Defense counsel's performance at sentencing was deficient in light of the conflicting Sixth Circuit caselaw and the pending *Montanez* litigation. In its response opposing the instant motion, the Government claims that Sixth Circuit caselaw available to Frost's counsel at sentencing had established that a prior conviction under O.R.C. § 2925.03(A)(4) constituted a predicate offense for career offender status. However, as discussed above, that view overlooks the *Wright* decision and the fact that *Gibbs*, *Wright*, and *Coteat* were all unpublished decisions with no binding precedential value. Simply put, caselaw in the Sixth Circuit at the time of Frost's sentencing was conflicted and none was controlling.[4] There was, with *Wright*, at least one directly relevant Sixth Circuit case

---

[4]The Sixth Circuit acknowledged as much in its 2006 decision in *Montanez*. *Montanez*, 442 F.3d at 489 ("[T]here are *conflicting* unpublished dispositions on this issue in our Circuit . . . .") and 792 ("Because of past *conflicting* unpublished dispositions, however, we address the errors contained in those decisions.") (emphasis added). Magistrate Judge Limbert, too, admits as much with his characterization that "Sixth Circuit precedent in existence at
(continued...)

-13-

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

squarely in Frost's favor.[5]

Nor is this a situation that depended upon a favorable outcome of *Montanez*, as Magistrate Judge Limbert asserts. Certainly there was a possibility that *Montanez* would come out the other way. But there was nothing to lose, regardless how *Montanez* came out. This was not a situation where the "challenged action might be considered sound strategy." *Strickland*, 466 U.S. at 689 (quotations and citations omitted).

There was *no cost* to objecting to the Petitioner's career offender status. Indeed, at sentencing, the Court inquired as to whether the Defendant was making such an objection, and offered a ruling (overruling the objection) in the event the Defendant was making such an objection. The Court proceeded to grant a variance because the career offender classification seemed to overstate the Defendant's criminal history. This ruling was based, in major part, on the facts of the underlying conviction. There was no reason to think this argument for a variance would have been mutually exclusive to the objection to the career offender status. They are alternative arguments: "The Defendant does not qualify as a career offender, but if he does, the classification overstates his criminal history." It is unreasonable to assume there would be risk to making this argument when

---

[4](...continued)
the time of Petitioner's sentencing was, at best, conflicting." [Doc. 96 at 11.] However, the Court does not rely on either of those sources, which both benefit from hindsight. The conflict in the caselaw, contained in such a closed universe of three cases as it was, should have been clear at the time of Petitioner Frost's sentencing in early 2006.

[5]There was also favorable caselaw in other jurisdictions. *See Foster* (interpreting the same Ohio statute) and *United States v. Gaintan*, 954 F.2d 1005 (5th Cir. 1992). The Court does not suggest that Frost's counsel at sentencing had a duty to cite to caselaw from other jurisdictions. (Although the Third Circuit has held that the failure to cite favorable decisions in other circuits indicates deficient performance under the *Strickland* standard. *United States v. Otero*, 502 F.3d 331, 336 (3rd Cir. 2007).) However, it seems the *Foster* case, the Ninth Circuit's interpretation of the same provision of the Ohio code, would have been especially valuable to the Petitioner's cause. Regardless, the conflicting *Gibbs-Wright-Coteat* line of cases within the Sixth Circuit was sufficient notice to Frost's counsel that Frost at least had a cognizable argument.

-14-

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

lawyers regularly make alternative arguments.

There was also no cost to preserving the objection, without knowing how *Montanez* would be decided. If *Montanez* had eventually come out the other way, affirming that Petitioner Frost was a career offender, the Defendant simply would have lost on appeal. He would not have been subject to resentencing, so there could have been no repercussions after the *Montanez* ruling.

Magistrate Judge Limbert raises the possibility that counsel could have petitioned the Court to continue the sentencing pending a ruling in *Montanez*. That may have been another reasonable course of action. Magistrate Judge Limbert, however, suggests that asking for a continuance "could have significantly undermined Petitioner's motion for a downward variance if *Montanez* reaffirmed the *Coteat* analysis." [Doc. 96 at 12.] The Court disagrees. Just as making the objection at the time of sentencing would not have undermined the simultaneous, alternative argument for a downward variance because the career offender status overstated Frost's criminal history, awaiting the *Montanez* outcome would not have affected the chances for the variance argument to succeed. Had the Sixth Circuit affirmed that Frost was a career offender, that would have had no bearing on the Court's conclusion as to whether a variance was warranted, just as the Court's finding that Frost was a career offender in the actual sentencing that occurred had no bearing on the Court's decision to grant a variance.

The career offender classification and the downward variance arguments operate independently of each other, other than the fact that the career offender classification is a condition precedent to the variance argument. Once the career offender status is decided, and the question turns to the downward variance, the career offender conclusion no longer bears on the variance argument.

-15-

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

Given that there was Sixth Circuit caselaw in the Petitioner's favor, the absence of any cost or even effort involved in making an objection leads to the conclusion that defense counsel was did not perform reasonably. No part of this conclusion requires or relies on hindsight, as prohibited by *Bell v. Cone*, 535 U.S. 685, 698 (2002), and *Strickland*, 466 U.S. at 689, because the same would have been true regardless how *Montanez* came out.

*iii. Defense Counsel's Deficient Performance Prejudiced the Petitioner*

The Sixth Circuit's decision in *Montanez* most likely would have benefitted Petitioner Frost. Whether the Petitioner would have succeeded at sentencing is immaterial. By objecting to the Petitioner's career offender status on the basis of the inclusion of the prior state conviction as a predicate controlled substance offense, defense counsel would have at least preserved the issue for direct appeal. Although Frost waived many rights to appeal in his plea agreement, he expressly preserved the right to appeal "the district court's determination of the defendant's . . . Career Offender status if objected to by the defendant at the time of sentencing." [Doc. 38 at 5-6.] Because *Montanez* was decided less than two months after Petitioner Frost's sentencing, he in all likelihood would have been able to take advantage of the decision on direct appeal. Although this conclusion is not a certainty, it is reasonably probable - it is sufficient to undermine confidence in the outcome. See *Strickland*, 466 U.S. at 694.

Given the clear holding in *Montanez*, Frost would have won his appeal, and been resentenced without the career offender designation. The applicable Guidelines range would have been 37-46 months, rather than the 188-235 months Frost actually faced as a career offender. Although Frost was ultimately sentenced below the Guidelines range, at 135 months, that is still 89 months greater than the maximum he should have faced. Certainly, the Guidelines are only advisory, and so there

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

is no guarantee what sentence Frost would have received if he was not sentenced as a career offender. But one can surmise based on the Court's agreement with the Defendant's argument about the overstatement of his criminal history that the sentence would have been within, if not below, the 37-46 month Guidelines range. In any event, such a vast difference in applicable Guidelines ranges suggests the Petitioner is currently serving a sentence significantly longer than he would have faced had the objection been preserved for appeal. The Court considers this discrepancy to have prejudiced the Petitioner and resulted in a fundamentally unfair outcome – the Petitioner was sentenced at least seven years beyond the sentence he should have received.

For the foregoing reasons, the Court grants Petitioner Frost's first ground for relief.

B. *Ground Two: Due Process Violation*

Frost's second ground for relief claims that the Probation Department failed to adequately and correctly advise the Court about the Petitioner's prior state conviction and applicable law. As a result, the Petitioner claims the presentence report was incorrect, and the Petitioner was sentenced based upon a misunderstanding of the relevant facts and law. Because the Court finds in the Petitioner's favor on the first ground for relief, the ineffective assistance of counsel claim, and therefore grants the motion to vacate the Petitioner's sentence, the Court need not consider this second ground for relief.

V. Conclusion

For the reasons detailed above, the Court **CONDITIONALLY GRANTS** Petitioner Frost's motion to vacate, set aside, or correct his sentence. [Doc. 77.] Accordingly, the Petitioner's sentence is ordered vacated, and the Petitioner will be resentenced by this Court. Counsel for the United States shall take the necessary action to have Defendant Frost returned to this Court's jurisdiction

-17-

Case No. 1:05-CR-433 [1:07-CV-297]
Gwin, J.

for resentencing as soon as possible.

    IT IS SO ORDERED.


Dated: March 17, 2009          s/ *James S. Gwin*
                                                            JAMES S. GWIN
                                                            UNITED STATES DISTRICT JUDGE